UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DAVID ALLEN SABIN,

        Petitioner,

v.                                                                CASE NO. 01-CV-72377-DT
                                                                  HON. JOHN CORBETT O'MEARA
WARDEN LAVIGNE,

        Respondent.

_____/

**<u>OPINION AND ORDER DENYING HABEAS CORPUS PETITION</u>**

This matter is pending before the Court on petitioner David Allen Sabin's *pro se*

application for the writ of habeas corpus under 28 U.S.C. § 2254.  Because Petitioner's claims do

not warrant granting the writ of habeas corpus, his habeas petition will be denied.

## I. Background

Following a bench trial, Petitioner was convicted in the former Detroit Recorder's Court

of assault with intent to commit great bodily harm less than murder, MICH. COMP. LAWS §

750.84.  On March 7, 1997, the trial court sentenced Petitioner to imprisonment for four to ten

years.  Petitioner appealed as of right, but the Michigan Court of Appeals affirmed his

conviction.  *See People v. Sabin*, No. 203622 (Mich. Ct. App. Oct. 22, 1999).  The Michigan

Supreme Court denied leave to appeal because it was not persuaded to review the issues

presented to it.  *See People v. Sabin*, No. 115760 (Mich. Sup. Ct. July 5, 2000).[1]

Petitioner initiated this action on June 26, 2001.  He alleged that (1) the trial court

violated the State's speedy trial statute, (2) he was convicted on the basis of insufficient

---

[1] Justices Michael F. Cavanagh and Marilyn Kelly voted to grant leave to appeal.

evidence, (3) he was denied his rights to effective assistance of counsel, to a fair trial, and to present a defense when the trial judge questioned him, decided which witnesses would be waived, and assumed the role of the prosecutor, (4) the prosecutor argued important facts not in evidence, and (5) the trial judge relied on inaccurate information in reaching a decision in the case.

On June 5, 2002, the Court stayed Petitioner's exhausted claims (II through IV) and dismissed his first and fifth claims because he failed to raise those claims as federal constitutional issues in state court. The stay was conditioned on Petitioner presenting his unexhausted claims to the state court within thirty days of the Court's order and returning to federal court within thirty days of exhausting state remedies.

Petitioner returned to state court where he filed a motion for relief from judgment, which alleged that (1) he was deprived of his state and federal rights to a speedy trial, (2) the trial court relied on inaccurate information when rendering its verdict, and (3) he was denied effective assistance of appellate counsel. The trial court denied Petitioner's motion on the grounds that appellate counsel was not ineffective and the court was precluded from reviewing Petitioner's other claims because he raised them on appeal.

Petitioner raised the same issues in the Michigan Court of Appeals, which denied leave to appeal "for failure to meet the burden of establishing entitlement to relief under [Michigan Court Rule] 6.508(D)." *People v. Sabin*, No. 251663 (Mich. Ct. App. Mar. 11, 2004). On December 29, 2004, the Michigan Supreme Court denied leave to appeal for the same reason. *See People v. Sabin*, No. 126079 (Mich. Sup. Ct. Dec. 29, 2004).

On February 1, 2005, Petitioner moved to re-instate this action. The Court granted

2

Petitioner's motion.  Respondent then filed a supplemental answer, and Petitioner filed a reply.

## II.  The Facts

### A.  Prosecution Witnesses

Althea Wentzel testified at trial that she dated Petitioner for about three weeks and ended the relationship about a month before the incident in question.  On September 3, 1995, she left her car in the parking lot of Duffy's Lounge in Detroit.  The following morning, Petitioner called her and said that he had possession of her car.  She rode with her girlfriend, Sue Friend, to the area where she had left her car the night before.  The car was not there, but as they were driving down Grand River Avenue, she saw her car in a parking lot near Telegraph Road.  They tried unsuccessfully to start the car and then left in Sue's car.  Shortly afterwards, Petitioner approached them in a van.  They veered to the side and ended up on someone's lawn on Woodbine Street.  Petitioner got out of his van, approached Althea, and began to hit her.  She fought back, and they ended up by Petitioner's van.  After Petitioner hit her, he started to get in his van.  Althea's arm was positioned at the door as she tried to strike him.  Petitioner grabbed her arm through the window and drove off at 20 to 25 miles per hour with Althea hanging from the window.  Because her feet were dragging on the ground, she jumped on the running board.  Then she let go, hit the pavement, and was knocked unconscious.  She estimated that they traveled the length of one house while she was standing on the running board of the van.  She regained consciousness in the hospital.  She sustained other injuries, including bruises and cuts, a sprained ankle, and a cut on the back of her head.

Susan Friend testified that, on the morning of September 4, 1995, she took Althea Wentzel to Duffy's on Six Mile Road in Detroit to see whether Althea's car was there.  It was

3

not there, but as they were driving down Grand River Avenue, they saw Althea's car in a parking

lot at Grand River and Telegraph.  The car would not start, so they left in her (Sue's) convertible.

On Woodbine Street, they saw Petitioner coming directly toward them in his van.  She pulled

over on a person's driveway and lawn.  Petitioner got out of his van, and Althea got out of Sue's

car.  The two of them (Petitioner and Althea) started to scuffle.  Petitioner dragged Althea by the

arm to his van.  He got in the van and took off quickly with Althea hanging onto the van.

Petitioner traveled the length of a couple houses and then released Althea, who went flying

through the air and fell in the middle of the street where she laid unconscious.  Sue did not recall

whether Althea had jumped on the running board of Petitioner's van.

### B.  Waivers of Witnesses

The parties waived production of a medical doctor after stipulating that Althea injured

her ankle, but did not suffer any permanent injuries from the incident.  Petitioner also waived

production of two police officers who arrived after the incident.  Petitioner stipulated that Natalie

Williams' statement could be read into the record and, if Alec Williams were called as a witness,

he would say that he observed the assault, the complainant jumping on Petitioner's vehicle, and

Petitioner driving off.

As for the remaining witnesses, the prosecutor stated that he did not know where Bonnie

Courage was, and he was unable to locate Sharmaine Ronner or Dorothy Morton.  Petitioner did

not know Morton, and defense counsel stated that Ronner did not see anything.  The prosecutor

stated that he subpoenaed the witnesses, but the people had moved and left no forwarding

addresses or current telephone numbers.  When defense counsel stated that the prosecution had

not exercised due diligence in producing the witnesses, the trial court stated that, if the witnesses

4

were present, it would infer that they would testify in Petitioner's favor.  Defense counsel agreed

to that suggestion and asked for an adverse instruction.  The court responded, "Okay," and the

prosecutor then rested his case.

### C.  The Defense

Petitioner testified and did not deny being involved in the incident on Woodbine Street

on September 4, 1995.  He admitting telling a detective after his arrest that Althea had been

drunk, that he thought she was high on cocaine, and that they had an altercation.  When he left

the scene, Althea ran to his van and tried to jump on the running board.

Petitioner denied telling Althea by telephone that she would not find her car in the

parking lot where she left it, and he denied moving her car there.  He also denied seeing Althea

and her girlfriend the previous night as they had testified, and he claimed that the detective said

he did not think Petitioner was guilty.

Defense counsel stated in his closing argument that the incident was a mutual affray with

no specific intent to do serious bodily harm and that Petitioner was simply trying to get away.

At Petitioner's request, defense counsel also stated that Natalie Williams had stipulated that the

complainant ran to the van, jumped on the van, and fell off.

### D.  The Trial Court's Rulings

The trial court stated in its findings of fact that, although the witnesses' stories varied in

some of the details, everyone agreed that Petitioner drove off with a person hanging onto the car.

The court determined that there was an altercation, which ended by Petitioner's vehicle, that

Petitioner was holding Althea to the vehicle and that he let go of her.  The court stated that

specific intent could be implied from that act.  The trial court found the two prosecution

5

witnesses to be credible, and it concluded that Petitioner was guilty as charged of assault with intent to do great bodily harm less than murder.

On an undetermined date, Petitioner moved for a dismissal on the ground that his right to a speedy trial was violated. At his sentencing, the trial court ruled that Petitioner was not denied his right to a speedy trial. The court then sentenced Petitioner to imprisonment for four to ten years.

### III. Respondent's Defenses

### 1. The Statute of Limitations

As an initial matter, Respondent contends that Petitioner has not complied with the one-year statute of limitations, because he failed to file his post-conviction motion in state court within thirty days of this Court's order dated June 5, 2002. The June 5 order conditioned the stay of this case on Petitioner returning to state court within thirty days of the order. Thirty days from June 5, 2002, was July 5, 2002. Petitioner has provided documents demonstrating that he gave his motion for relief from judgment to a prison official on July 2, 2002. *See* exhibit to Petitioner's reply to Respondent's answer, Doc. 31, Aug. 8, 2005. Although the state docket indicates that Petitioner did not file his motion for relief from judgment until August 30, 2002, the motion was received by the clerk of the trial court on July 8, 2002. *See id.* This Court received a copy of the motion on July 5, 2002. *See* Doc. 22.

Even if Petitioner did not comply fully with the Court's June 5, 2002 order, Respondent has not alleged any prejudice as a result of the allegedly tardy filing in state court. The Court therefore will excuse the delay in filing the motion in state court. The statute of limitations is equitably tolled for the time that it took Petitioner to file his motion for relief from judgment in

6

state court.

## 2. Procedural Default

Respondent asserts that Petitioner's claims about the trial court's and the prosecutor's conduct are procedurally defaulted because Petitioner failed to make contemporaneous objections to the conduct at trial. Procedural default is not a jurisdictional bar to review of the merits of an issue, provided that the Court denies the habeas petition. *Howard v. Bouchard*, 405 F.3d 459, 476 (6th Cir. 2005), *cert. denied*, __ U.S. __, __, 126 S. Ct. 1032 (2006); *Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003) (citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997)). It is more efficient to address the merits of Petitioner's claims than to analyze them under the doctrine of procedural default. Thus, the alleged procedural defaults are excused. The Court will proceed to adjudicate Petitioner's claims in light of the following standard of review.

## IV. Standard of Review

Petitioner is entitled to the writ of habeas corpus only if he can show that the state court's adjudication of his claim on the merits–

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court's decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000) (Justice O'Connor's

7

majority opinion on Part II).  A state court's decision is an "unreasonable application of" clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."  *Id*. at 413.

"[A]n *unreasonable* application of federal law is different from an *incorrect* application of federal law."  *Id*. at 410 (emphasis in original).  "[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable."  *Id*. at 409.   "Furthermore, state findings of fact are presumed to be correct unless the defendant can rebut the presumption by clear and convincing evidence.  28 U.S.C. §  2254(e)(1)."  *Baze v. Parker*, 371 F.3d 310, 318 (6th Cir. 2004), *cert. denied*, 544 U.S. 931 (2005).

## V.  Discussion

### A.  Speedy Trial

Petitioner alleges that he was denied his right under state law to a trial within 180 days of becoming an inmate and his federal constitutional right to a speedy trial.  The alleged violation of state law is not cognizable here, because "federal habeas corpus relief does not lie for errors of state law."  *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990).  "[A] state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus."  *Bradshaw v. Richey*, 546 U.S. 74, __, 126 S. Ct. 602, 604 (2005).  "In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States.  28 U.S.C. § 2241; *Rose v. Hodges*, 423 U.S. 19, 21 (1975) (per curiam)."  *Estelle v. McGuire,* 502 U.S. 62, 68 (1991).  Therefore, the

8

only question is whether Petitioner's constitutional right to a speedy trial was violated.

The Sixth Amendment to the United States Constitution provides that, "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy . . . trial." U.S. CONST. VI. "[A]ny inquiry into a speedy trial claim necessitates a functional analysis of the right in the particular context of the case. . . ." *Barker v. Wingo*, 407 U.S. 514, 522 (1972). To facilitate such an analysis, the Supreme Court has devised "a balancing test, in which the conduct of both the prosecution and the defendant are weighed." *Id*. at 530. Four factors which courts should assess in determining whether a particular defendant has been deprived of the right to a speedy trial are: the length of the delay; the reason for the delay; the defendant's assertion of the right; and prejudice to the defendant. *Id*. These four factors are related to one another and "must be considered together with such other circumstances as may be relevant." *Id*. at 533.

### 1. Length of the Delay

"The length of the delay is to some extent a triggering mechanism. Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance." *Id*. at 530.

> If the length of the delay is not "uncommonly long," then judicial examination ends. *Doggett v. United States*, 505 U.S. 647, 652 (1992). The length of the delay is measured from the date of the indictment or the date of the arrest, whichever is earlier. *United States v. Marion*, 404 U.S. 307, 320 (1971); *Redd v. Sowers*, 809 F.2d 1266, 1269 (6th Cir. 1987). A delay approaching one year is presumptively prejudicial and triggers application of the remaining three factors. *Doggett*, 505 U.S. at 652 n.1.

*Maples v. Stegall*, 427 F.3d 1020, 1025-26 (6th Cir. 2005). Delays as long as five years have been held not to violate the right to a speedy trial. *See, e.g., Barker*, 407 U.S. at 533-36.

Petitioner was arrested on October 29, 1995, and his trial was held over fifteen months

9

later on February 6, 1997. Because the delay was more than a year, it is presumptively

prejudicial.

## 2. Reasons for the Delay

Closely related to the length of the delay are the reasons for the delay. *Barker*, 407 U.S.

at 531. "The core task is determining which party shoulders the balance of blameworthiness for

th[e] delay." *United States v. O'Dell*, 247 F.3d 655, 667 (6th Cir. 2001).

> [D]ifferent weights should be assigned to different reasons. A deliberate attempt
> to delay the trial in order to hamper the defense should be weighted heavily
> against the government. A more neutral reason such as negligence or
> overcrowded courts should be weighted less heavily, but nevertheless should be
> considered since the ultimate responsibility for such circumstances must rest with
> the government rather than with the defendant.

*Barker*, 407 U.S. at 531 (footnote omitted).

The trial court determined that 123 days of the delay were attributable to Petitioner and

that 20 days of the delay were neutral because the court adjourned the case for a competency

hearing. The remaining delay is either unexplained or is due to the prosecutor's or the trial

court's failure to bring the case to trial. Unexplained delays must be attributed to the state.

*United States v. Schreane*, 331 F.3d 548, 556 (6th Cir. 2003) (quoting *Redd v. Sowders*, 809 F.2d

1266, 1269 (6th Cir. 1987)). However, there is no evidence here of a deliberate attempt to delay

the trial to hinder the defense or to gain a tactical advantage over Petitioner. The delay

apparently was the result of negligence or a crowded trial docket.

## 3. Assertion of the Right

The third factor in determining whether a defendant's right to a speedy trial has been

violated is whether the defendant asserted the right. A "defendant's assertion of his speedy trial

right . . . is entitled to strong evidentiary weight in determining whether the defendant is being

10

deprived of the right." *Barker*, 407 U.S. at 531-32.

Petitioner insists that he asserted his right to a speedy trial from the first time he was brought into the trial court's courtroom. The record, however, indicates that, when Petitioner waived his right to a jury trial on April 30, 1996, nothing was said about a speedy trial. (Tr. Apr. 30, 1996, at 3-5.) The attorneys appeared before the trial court again on Tuesday, January 21, 1997. The prosecutor waived his opening statement, and defense counsel reserved his opening statement. Defense counsel then asked the trial court whether it would consider postponing the case to the following Monday. When the court clerk suggested February 6 instead, defense counsel responded, "That's good, Your Honor." (Tr. Jan. 21, 1997, at 3.) Nothing was said about a speedy trial.

The trial was conducted on February 6, 1997. Again, no arguments were raised about Petitioner's right to a speedy trial under either state or federal law.

Petitioner was sentenced on March 7, 1997. At that time, defense counsel noted that there was a motion for dismissal pending under the State's speedy trial rule and that the motion had been argued before the court at an earlier time. The court then denied the motion and sentenced Petitioner.

To summarize, the date that Petitioner first asserted his right to a speedy trial is unclear from the record before the Court. The record indicates only that Petitioner raised the issue sometime before his sentencing.

### 4. Prejudice

The fourth and final factor to be analyzed is prejudice to the defendant. "A defendant must show that 'substantial prejudice' has resulted from the delay." *Schreane*, 331 F.3d at 557.

11

Prejudice should be assessed in light of the following three defense interests which the speedy trial right was designed to protect:  (1) oppressive pretrial incarceration; (2) anxiety and concern of the accused; and (3) the possibility that the defense will be impaired.  *Barker*, 407 U.S. at 532. "Of these, the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system.  If witnesses die or disappear during a delay, the prejudice is obvious." *Id.* "When prejudice has been found, the government's delay has typically been shockingly long.  *See, e.g., Doggett*, 505 U.S. at 657 (six years); [*United States v.*] *Brown*, 169 F.3d [344, 351 (6th Cir. 1999)] (five and one-half years); *United States v. Graham*, 128 F.3d 372, 376 (6th Cir. 1997) (eight years)." *Schreane*, 331 F.3d at 559.

Petitioner alleges that there were two bystanders who stated to a detective that the complainant tried to jump on Petitioner's van while the door was shut and as Petitioner was driving away.  Petitioner claims that, due to the long delay between his arrest and the trial, he was unable to find the witnesses.

The record confirms that the prosecutor was unable to locate certain witnesses due to the fact that they had moved and left no forwarding addresses or current telephone numbers.  (Tr. Feb. 6, 1997, at 38-39.)  The absence of these witnesses did not prejudice Petitioner because the parties stipulated that Alec Williams observed the assault and the complainant jumping on Petitioner's vehicle and Petitioner driving off.  (Tr. Feb. 6, 1997, at 38.)  The complainant herself testified that she jumped on Petitioner's van, and the trial court took notice that the complainant, Sue Friend, and Natalie Williams said the complainant jumped on Petitioner's's vehicle and Petitioner drove off.  (*Id*. at 11 and 59-60.)  The trial court also said that, if other people were present, they would testify in Petitioner's favor.  (*Id*. at 60.)  The fact that Althea Wentzel may

12

have jumped on the running board of the van apparently was less significant to the trial court than the fact that Petitioner drove off with someone hanging on to his car.  Furthermore, the entire delay of about fifteen months was not "shockingly long" by Sixth Circuit standards.  The Court concludes that the delay in Petitioner's case did not result in "substantial prejudice."

### 5.  Summary

Factor one (length of the delay) weighs in Petitioner's favor because the delay exceeded one year and was presumptively prejudicial.  Factor two (reasons for delay) also weighs in Petitioner's favor, because it appears that only four months of the fifteen-month delay were attributable to Petitioner.  Factor three (assertion of the right) weighs in favor of the State because Petitioner has not demonstrated that he requested a speedy trial soon enough for the trial court to comply with his request.  Factor four (prejudice from the delay) weighs in favor of the State because Petitioner has not shown that he was substantially prejudiced as a result of the delay.

Although two factors weigh in favor of the State and two factors weigh in Petitioner's favor, even a twenty-month delay is not extraordinarily long under Sixth Circuit precedent. *United States v. Jackson*, 473 F.3d 660, 668 (6th Cir. 2007).  Given the lack of evidence of actual prejudice to Petitioner or bad faith on the part of the State, the Court concludes that Petitioner has not established a speedy-trial violation warranting habeas corpus relief.  *See id.* Therefore, the state courts' rejection of Petitioner's speedy trial claim did not result in a decision that was contrary to, or an unreasonable application of, Supreme Court precedent.

### B.  Sufficiency of the Evidence

Petitioner alleges that he was convicted on the basis of insufficient evidence because

Althea Wentzel placed herself in danger by jumping on the running board of his van and then letting go.  Petitioner contends that the minor injuries which Althea suffered cannot support a conviction for assault with intent to commit great bodily harm less than murder.  Petitioner argues that he could not have anticipated that Althea would place herself in harm's way and that this case is analogous to a victim standing behind a moving truck and refusing to move out of the way.

### 1.  Legal Framework

The critical inquiry on habeas review of the sufficiency of the evidence to support a criminal conviction is

> whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt.  [T]his inquiry does not require a court to "ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt."  Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

*Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979) (internal citation and footnote omitted) (emphasis in original).

"An assessment of the credibility of witnesses is generally beyond the scope of federal habeas review of sufficiency of evidence claims.  *Matthews v. Abramajtys*, 319 F.3d 780, 788 (6th Cir. 2003) (citing *Gall v. Parker,* 231 F.3d 265, 286 (6th Cir. 2000)).  The Court must defer to the factfinder's "credibility determinations and resolutions of conflicts in testimony, weight accorded to evidence, and reasonable inferences drawn from the basic facts to reach ultimate factual conclusions."  *Caldwell v. Russell*, 181 F.3d 731, 738 n. 6 (6th Cir. 1999).

In addition, the *Jackson* "standard must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law," *Jackson*, 443 U.S. at 324

14

n.16, and through the framework of 28 U.S.C. § 2254(d). *Martin v. Mitchell*, 280 F.3d 594, 617 (6th Cir. 2002). In Michigan, the elements of assault with intent to do great bodily harm less than murder are: "(1) an attempt or offer with force or violence to do corporal hurt to another (an assault), (2) coupled with an intent to do great bodily harm less than murder." *People v. Harrington*, 194 Mich. App. 424, 428; 487 N.W.2d 479, 482 (1992). "The term 'intent to do great bodily harm less than the crime of murder' has been defined as an intent to do serious injury of an aggravated nature." *People v. Mitchell*, 149 Mich. App. 36, 39; 385 N.W.2d 717, 718 (1986) (quoting *People v. Ochotski*, 115 Mich. 601, 608; 73 N.W. 889 (1898)).

## 2.  Analysis

There was evidence that Petitioner grabbed Althea Wentzel's arm and drove off with Althea hanging onto his van. Sue Friend testified that Petitioner let go of Althea. Although Althea admitted that she jumped on the running board and later let go, she claimed that she jumped on the running board because her feet were dragging on the ground when the car moved. As the Michigan Court of Appeals recognized,

> despite the discrepancies in the testimony, there was no dispute that, as the trial court succinctly stated, "whatever happened, the defendant drove off with a person hanging onto the car." In other words, defendant either waited until he was traveling at a significant speed before releasing his grip on the complainant, or he accelerated his vehicle knowing that the complainant was hanging on the side. Under either scenario, a reasonable factfinder could find that the elements of [assault with intent to do great bodily harm] were proven beyond a reasonable doubt.

*Sabin,* Mich. Ct. App. No. 203622, at 2. As for Althea's injuries, the infliction of a serious injury is not an element of assault with intent to commit great bodily harm less than murder. *People v. Chandler*, No. 232358, 2003 WL 21186605 (Mich. Ct. App. May 20, 2003) (unpublished opinion) (citing *People v. Bailey*, 451 Mich. 657, 668-69; 549 N.W.2d 325 (1996)).

15

Even if it were, Althea testified that she was knocked unconscious when she fell from

Petitioner's van and that she also incurred bruises, cuts, and a sprained foot.  The state court of

appeals rejected Petitioner's implicit characterization of the injuries as trivial, as does this Court.

### 3.  Conclusion

The facts adduced at trial were sufficient to establish that Petitioner attempted with force

or violence to hurt another person and that he intended to do serious injury of an aggravated

nature.  "[I]t was not irrational for the [trier of fact] to accept the prosecutor's evidence as

establishing guilt beyond a reasonable doubt."  *Tinsley v. Million*, 399 F.3d 796, 815 (6th Cir.),

*cert. denied*, __ U.S. __, __, 126 S. Ct. 760 (2005).  Therefore, the state court's conclusion -- that

a reasonable factfinder could find the elements of assault with intent to commit great bodily

harm were proven beyond a reasonable doubt -- did not result in a decision that was contrary to,

or an unreasonable application of, *Jackson*.

### C.  The Trial Court's Conduct

Petitioner alleges that he was denied his right to the effective assistance of counsel, his

right to a fair trial, and his right to present a defense by the trial court's conduct.  Specifically,

Petitioner asserts that the trial court took over the direct examination of him, made decisions

regarding which witnesses would be waived, and assumed the role of the prosecutor in

questioning witnesses.

### 1.  Legal Framework

The United States Court of Appeals for the Sixth Circuit explained long ago that trial

judges are

16

more than . . . mere arbitrator[s] to rule upon objections and to instruct the jury. It
is [their] function to conduct the trial in an orderly way with a view to eliciting
the truth and to attaining justice between the parties. It is [their] duty to see that
the issues are not obscured and that the testimony is not misunderstood. [They]
ha[ve] the right to interrogate witnesses for this purpose.

However, the right of the trial judge to participate in the proceedings and
to interrogate witnesses is not an unlimited one. Such participation should be
exercised in conformity with the standards governing the judicial office. The
judge should exercise self-restraint and preserve an atmosphere of impartiality.
When the remarks of the judge during the course of a trial, or his [or her] manner
of handling the trial, clearly indicate a hostility to one of the parties, or an
unwarranted prejudgment of the merits of the case, or an alignment on the part of
the Court with one of the parties for the purpose of furthering or supporting the
contentions of such party, the judge indicates, whether consciously or not, a
personal bias and prejudice which renders invalid any resulting judgment in favor
of the party so favored.

*Knapp v. Kinsey*, 232 F.2d 458, 466 (6th Cir. 1956) (internal citations omitted). Under *Liteky v.*

*United States*, 510 U.S. 540 (1994),

a judge's misconduct at trial may be 'characterized as bias or prejudice' only if 'it
is so extreme as to display clear inability to render fair judgment,' so extreme in
other words that it 'display[s] a deep-seated favoritism or antagonism that would
make fair judgment impossible. '[J]udicial remarks during the course of a trial
that are critical or disapproving of, or even hostile to, counsel, the parties, or their
cases ordinarily do not support a bias or partiality challenge . . . . [But] they will
do so if they reveal such a high degree of favoritism or antagonism as to make fair
judgment impossible.'

*Lyell v. Renico*, 470 F.3d 1177, 1186-87 (6th Cir. 2006) (internal citations omitted).

## 2. Analysis

The trial court took an active role in Petitioner's case. The court directed questions to the

two prosecution witnesses, Althea Wentzel (Tr. Feb. 6, 1997, at 7, 10, 17-21) and Susan Friend

(*id*. at 23, 25-27, 30). The court also exerted some pressure on the parties regarding the waiver

of witnesses (*id*. at 32-40). In addition, the court conducted most of the direct examination of

Petitioner (*id*. at 41-45), and prevented Petitioner from having a conversation with the court after

17

he completed his testimony (*id*. at 48-49).

The discussion on the waiver of witnesses was proper.  The court narrowed the issues, facilitated stipulations on the evidence, and eliminated unnecessary witnesses.  The court included Petitioner in the discussion and agreed to infer that certain missing witnesses would speak favorably of Petitioner if they testified.

There was nothing wrong with preventing Petitioner from talking to the court after he completed his testimony and the defense had rested.  Petitioner was not prejudiced by the court's ruling that they could not have a conversation, because he managed to add to the record the fact that the victim continued to call him after the incident.  (*Id*. at 48.)

The trial court asked the prosecution witnesses more than a few questions, and it took over the direct examination of Petitioner and part of the cross-examination.  However, a

> trial court has the responsibility of assuring "that the issues are not obscured and that the testimony is not misunderstood."  The Court may therefore "interject itself into the proceedings when 'necessary to clear up confusion in the evidence or to supplement, in an impartial fashion, the presentation of a poorly prepared attorney.'"

*United States v. Hynes*, 467 F.3d 951, 958 (6th Cir. 2006) (internal citation omitted) (quoting *United States v. Hickman*, 592 F.2d 931, 933 (6th Cir. 1979), and *McMillan v. Castro*, 405 F.3d 405, 410 (6th Cir. 2005)).

Although the trial court may have interjected itself more than was necessary, the court did not prevent the prosecutor and defense counsel from asking additional questions, and defense counsel did not object to the court's active involvement in the case.  In fact, at the conclusion of the court's examination of Petitioner, defense counsel thanked the trial court and stated that the court had done a good job.  Counsel had no additional questions for Petitioner.  (Tr. Feb. 6,

18

1997, at 45.)

The court allowed Petitioner to be directly involved in some matters that needed to be addressed, and it did not express any bias, prejudice, or hostility to either party. The court also did not give the appearance of having prejudged the case or being anti-defendant. In fact, Petitioner alleges that the trial court "was wavering on the ultimate verdict, right up to the time when he rendered it." *See* Brief on Appeal at 42.

The Court concludes that Petitioner's constitutional rights were not violated by the trial court's active involvement in the case. The state appellate court's conclusion -- that Petitioner was not deprived of effective assistance of counsel and that the trial court's comments did not demonstrate partiality or bias -- did not result in a decision that was contrary to, or an unreasonable application of, clearly established federal law as determined by the Supreme Court in *Liteky*.

### D. The Prosecutor

Petitioner alleges next that the prosecutor deprived him of a fair trial by arguing important facts not in evidence. The Michigan Court of Appeals stated that the prosecutor's comments were a proper inference from the evidence or a minor error that did not result in a miscarriage of justice.

Prosecutors may not misrepresent evidence, *Hodge v. Hurley*, 426 F.3d 368, 380 (6th Cir. 2005) (citing *Darden v. Wainwright*, 477 U.S. 168, 181-82 (1986)), or assert facts that were never admitted in evidence, *Washington v. Hofbauer,* 228 F.3d 689, 700 (6th Cir. 2000).

> Misrepresenting facts in evidence can amount to substantial error because doing so "may profoundly impress a jury and may have a significant impact on the jury's deliberations." *Donnelly v. DeChrisoforo*, 416 U.S. 637, 646 (1974). For similar reasons, asserting facts that were never admitted into evidence may

19

> mislead a jury in a prejudicial way.  *See Berger v. United States*, 295 U.S. 78, 84
> (1935).  This is particularly true when a prosecutor misrepresents evidence
> because a jury generally has confidence that a prosecuting attorney is faithfully
> serving his obligation as a representative of a sovereignty.  *See id.* at 88.

*Id.*

There was no risk of misleading a jury in this case, because Petitioner had a bench trial.

Showing prejudice from prosecutorial misconduct in a bench trial is more difficult than

demonstrating prejudice in a jury trial, because a judge presiding over a bench trial "is presumed

to know the law and apply it in making [his or] her decision."  *Hargrave-Thomas v. Yukins*, 236

F. Supp.2d 750, 778-79 (E.D. Mich. 2002) (Tarnow, J.) (citing *People v. Sherman-Huffman*, 466

Mich. 39, 42 (2002)), *reversed and remanded on other grounds*, 374 F.3d 383 (6th Cir. 2004),

*cert. denied*, 544 U.S. 979 (2005).

Moreover, "[c]laims of prosecutorial misconduct are reviewed deferentially on habeas

review," *Millender v. Adams*, 376 F.3d 520, 528 (6th Cir. 2004), *cert.* denied, 544 U.S. 921

(2005), and the Sixth Circuit "has been reluctant to grant habeas petitions based on improper

prosecutorial statements at closing argument."  *Wilson v. Mitchell*, 250 F.3d 388, 399 (6th Cir.

2001).  To prevail on a claim of prosecutorial misconduct, Petitioner must demonstrate that the

prosecutor's remarks, taken in the context of the entire trial, were sufficiently prejudicial and

infected the trial with such unfairness as to make the resulting conviction a denial of due process.

*Donnelly v. DeChristoforo*, 416 U.S. 637, 639, 643 (1974).  The standard on habeas review "is

whether the conduct was 'so egregious so as to render the entire trial fundamentally unfair.'"

*Pritchett v. Pitcher*, 117 F.3d 959, 964 (6th Cir. 1997) (quoting *Cook v. Bordenkircher*, 602 F.2d

117, 119 (6th Cir. 1979)).

Courts must ask whether the prosecutor's conduct or remarks were improper.  *Slagle v.*

20

*Bagley,* 457 F.3d 501, 516 (6th Cir. 2006). If the conduct or remarks were improper, a reviewing court must "decide whether the improper acts were sufficiently flagrant to warrant reversal." *Id.*

### 1.   Comments on Althea Wentzel's Testimony

Petitioner takes issue with the prosecutor's summary of Althea Wentzel's testimony. The prosecutor stated that Althea testified that Petitioner grabbed her, drove the van the length of one house, and then let go of her. (Tr. Feb. 6, 1997, at 49-51). Petitioner notes that Althea testified that *she* let go of Petitioner or the van after jumping on the running board of Petitioner's van. (*Id.* at 11). However, as the state court of appeals pointed out,

> while the complainant testified that she fell when she "let go," she also stated that defendant "grabbed [her] arm" and began driving off, dragging her down the street with her arm in the window. She further testified that defendant was traveling at a speed of twenty or twenty-five miles per hour "before [she] could let go."

*Sabin*, Mich. Ct. App. No. 203622, at 4 (alterations and quotations marks in original).

Even if the prosecutor's comment was improper, the comment was not flagrant because the record does not reveal an intentional attempt to mislead the trial court. In fact, Sue Friend testified that Petitioner released the complainant. (Tr. Feb. 6, 1997, at 27).

Whether Petitioner let go of the complainant or she let go of him was not a question of crucial importance because, as the trial court recognized, "whatever happened, the Defendant drove off with a person hanging onto the car. . . . [E]verybody agrees to that." (*Id.* at 63.)

### 2.   Comments on Sue Friend's Testimony

Petitioner also objects to the prosecutor's comment that Sue Friend testified that Petitioner assaulted Althea Wentzel while Althea was still seated in Sue' car. (*Id.* at 50). Sue's actual testimony was that Althea got out of Sue's car as Petitioner approached and that Petitioner

and Althea subsequently scuffled.  (*Id*. at 25-26.)

The prosecutor's comment was an inaccurate summary of Sue's testimony, but a *de minimis* error, given the complainant's testimony that Petitioner

> pulled up [and] jumped out.  We opened the door.  We had the top down.  He came over and grabbed and started hitting on me.

(*Id*. at 9.)  Furthermore, the trial court recognized that the altercation was a mutual affray.  (*Id*. at 63.)

In conclusion, the prosecutor's conduct, even if deemed improper, was not flagrant.  Therefore, the state court's decision was not contrary to, or an unreasonable application of, Supreme Court precedent.

### E.  The Trial Court's Findings of Fact

Petitioner's fifth claim alleges that the trial court made critical errors and relied on inaccurate information in its findings of fact.  The Michigan Court of Appeals concluded that the trial court's findings of fact were entirely sufficient and that a remand for additional findings was unnecessary because it would not facilitate appellate review.  In reaching this conclusion, the state court noted that the trial

> court discussed the testimony of the witnesses in great detail, noted the discrepancies, and in the end stated that he found the testimony of the complainant and Friend to be credible.  It is abundantly clear that the trial court was aware of the issues in the case.

*Sabin*, Mich. Ct. App. No. 203622, at 4.

Federal courts may not reexamine a trial court's findings of fact, *Barclay v. Florida*, 463 U.S. 939, 968 (1983) (Stevens, J., concurring in judgment), peer over a state court's shoulder and second-guess its interpretation of facts, *Godfrey v. Georgia*, 446 U.S. 420, 450 (1980), or

22

scrutinize a factfinder's reasoning process, *Harris v. Rivera*, 454 U.S. 339, 348 n.20 (1981). "[T]he findings of fact made by a state court are presumed to be correct and can be contravened only if the habeas petitioner can show by clear and convincing evidence that the state court's factual findings were erroneous." *Mason v. Mitchell*, 320 F.3d 604, 614 (6th Cir. 2003) (citing 28 U.S.C. § 2254(e)(1)). "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Anderson v. City of Bessemer*, 470 U.S. 564, 574 (1985).

According to Petitioner, the trial court incorrectly determined that the complainant testified that Petitioner let go of her when she was standing on the running board of his van. *See, e.g.,* Tr. Feb. 6, 1997, at 58 and 64. The complainant testified that *she* let go of Petitioner's van. (*Id*. at 11.) Sue Friend, however, testified that Petitioner let go of Althea. (*Id*. at 27 and 32.) Furthermore, the trial court was persuaded by the fact that, although the witnesses' testimony differed, "whatever happened, the Defendant drove off with a person hanging onto the car." (*Id*. at 63.) The record supports this conclusion.

Petitioner also alleges that the trial court failed to consider the impact of the complainant's own conduct in causing her injuries. Petitioner says that he could not have anticipated that an intoxicated person would jump on the running board of his van and, therefore, it cannot be said that he intended the harm that resulted.

Althea Wentzel testified that Petitioner grabbed her arm and took off with her hanging from the window. (*Id*. at 11.) She claimed that she jumped on the running board because her feet were dragging. Then she let go, fell to the ground, and was knocked unconscious. (*Id*. at 11-12.) The trial court took into consideration the complainant's admission that she got on the

23

running board of Petitioner's van.  The trial court also noted that Althea had a blood alcohol

level of 1.0 two or three hours after the incident and that Petitioner thought Althea was drunk

and high on cocaine at the time of the incident.  (*Id.* at 59-61.)

The record, nevertheless, does not support the conclusion that Althea Wentzel caused her

own injuries.  The testimony established that Petitioner was the aggressor and that he grabbed

her arm at the side of his van and either let go of her and drove off while she was still clinging to

the van.  The trial court's determination of the facts and ultimate conclusion that Petitioner was

responsible for the complainant's injuries were not unreasonable.  Therefore, Petitioner is not

entitled to the writ of habeas corpus on the basis of his fifth claim.  28 U.S.C. § 2254(d)(2).

## F.  Appellate Counsel

Petitioner's final claim alleges ineffective assistance of appellate counsel.  Petitioner

contends that his appellate attorney should have supported his first claim (denial of a speedy

trial) and his fifth claim (reliance on inaccurate information) with citations to the Federal

Constitution and federal case law.

Criminal defendants possess a constitutional right to effective assistance of counsel in

their first appeal of right.  *Evitts v. Lucey*, 469 U.S. 387, 396 (1985); *Mapes v. Tate*, 388 F.3d

187, 191 (6th Cir. 2004).  The test for ineffective assistance of counsel has two components:

"First, the defendant must show that counsel's performance was deficient. . . .   Second, the

defendant must show that the deficient performance prejudiced the defense."  *Strickland v.*

*Washington*, 466 U.S. 668, 687 (1984).  This standard is used to evaluate appellate counsel's

performance, as well as, trial counsel's performance.  *Mapes*, 388 F.3d at 191.

An attorney's performance is deficient if "counsel's representation fell below an

24

objective

 standard of reasonableness." *Strickland*, 466 U.S. at 688.  The defendant must show "that

counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the

defendant by the Sixth Amendment." *Id.* at 687.  "[E]rrors of tactics or omission do not

necessarily mean that counsel has functioned in a constitutionally deficient manner," and an

appellate attorney "cannot be ineffective for a failure to raise an issue that lacks merit." *Greer v.*

*Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001).

An attorney's deficient performance is prejudicial if "counsel's errors were so serious as

to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687.  The defendant

must show "a reasonable probability that, but for counsel's unprofessional errors, the result of

the proceeding would have been different.  A reasonable probability is a probability sufficient to

undermine confidence in the outcome." *Id.* at 694.

There was an arguable basis for Petitioner's claims under state law, and it is unlikely that

the result of the appeal would have been different even if appellate counsel had cited the Federal

Constitution or federal caselaw.  The state appellate court found no merit in the claims under

state law, and this Court has not found the claims to be procedurally defaulted as a result of

Petitioner's failure to assert them as federal constitutional issues on direct appeal.  Therefore, the

trial court's conclusion that Petitioner was not deprived of effective assistance of appellate

counsel was not objectively unreasonable.

## VI.  Conclusion

Petitioner's claims lack merit because the state courts' resolution of them did not result in

an unreasonable determination of the facts or a decision that was contrary to, or an unreasonable

application of, Supreme Court precedent.  Accordingly, the application for a writ of habeas

corpus is DENIED.


                                        s/John Corbett O'Meara
                                        United States District Judge


Dated:  February 21, 2007




I hereby certify that a copy of the foregoing document was served upon the parties of record on
this date, February 21, 2007, by electronic or ordinary mail.


                                        s/William Barkholz
                                        Case Manager



                                    26